**UNITED STATES of America, Appellant,**

v.

**TEXAS MEXICAN RAILWAY COMPANY, Appellee.**

**No. 17275.**

United States Court of Appeals Fifth Circuit.

Jan. 30, 1959.

William B. Butler, U. S. Atty., Arthur L. Moller, Asst. U. S. Atty., Houston, Tex., Joseph Kovner, James P. Turner, L. W. Post, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for appellant.

Elmore H. Borchers, Laredo, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal turns on the tax effect of a deposit in escrow of funds as security for the execution of a supersedeas bond in order to perfect the taxpayer's appeal from an adverse judgment in a suit for personal injuries. The taxpayer contends that deposit in escrow is equivalent to payment of the judgment and that the amount of the judgment may be deducted by a taxpayer on an accrual basis in the year in which the deposit was made. The district court held for the taxpayer. We reverse, on the ground that the deduction may be accrued only in the year in which the taxpayer's liability became fixed and certain. That was the year in which the judgment became final.

Texas Mexican Railway sued for a refund of $43,375 in corporate income taxes paid for the year 1953. 28 U.S.C.A. § 1346(a) (1). The claimed refund is 52% of a judgment against the railroad. There is no dispute as to facts.

October 10, 1952 a judgment was rendered against the railroad in favor of T. A. Bunn for personal injuries in the amount of $83,415 plus interest. The taxpayer's motion for a new trial was

denied January 2, 1953. In order to supersede the judgment and perfect an appeal, the taxpayer applied to the Maryland Casualty Company for a supersedeas bond. January 9, 1953, the taxpayer entered into an escrow agreement with Maryland Casualty. Under the terms of the agreement, the taxpayer placed $100,000 in escrow with the Frost National Bank. January 20, 1953 Maryland Casualty as surety executed the supersedeas bond in the amount of $95,000 conditioned upon the railroad prosecuting its appeal. The Court of Civil Appeals at St. Antonio, Texas Mexican R. Co. v. Bunn, 264 S.W.2d 518, affirmed the judgment against the taxpayer December 9, 1953. Motions for rehearing were denied. June 9, 1954, the Texas Supreme Court denied the railroad's application for writ of error, finally ending the litigation. The judgment was paid July 20, 1954.

At the time, the taxpayer itself did not regard the deposit in escrow as equivalent to payment or that liability accrued when the deposit was made. During 1952 the taxpayer accrued the amount of the judgment plus attorney's fees and court costs. The accrued liability for the judgment was carried on the taxpayer's books until the judgment was paid in 1954. The taxpayer did not deduct the amount of the judgment in 1953 in computing its income tax for that year.

■■ Section 43 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 43, provides that deductions shall be taken for the taxable year in which the amounts deducted are "paid or accrued" or "paid or incurred", depending on the taxpayer's method of accounting. The principle is well established that an expense is deductible by a taxpayer on the accrual basis only when liability becomes fixed. "The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the

right to receive, or the obligation to pay, has become final and definite in amount." Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 599, 88 L.Ed. 725.

In the leading case of Dixie Pine Products Co. v. Commissioner, 1943, 320 U.S. 516, 64 S.Ct. 364, 365, 88 L.Ed. 270, a taxpayer contested its liability for state gasoline tax. The court held that the taxpayer could not take a deduction while still contesting his liability for the item deducted. The Court stated:

"It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer. Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated."

In Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 597, 88 L.Ed. 725, the taxpayer deducted from gross income amounts of money deposited in 1935 with a depositary pending litigation in which it was contesting its liability to pay the money as a tax under the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq. The question was whether the money deposited in 1935 was an accrued tax liability for that year. The Court, applying the principle of Dixie Pine, held "that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent,

and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting".

■ The rationale of Dixie Pine and Security Mills is clear. A taxpayer seriously contesting a claim may not accrue it until liability is determined with reasonable certainty.[1] Two obvious reasons support this principle. First, a taxpayer cannot talk out of both sides of his mouth at one time. Second, even if skillful in such an accomplishment, the existence of any liability is uncertain until the last bell is rung in the last court.

The principles expressed in Dixie Pine and Security Flour Mills are controlling in this case. The deposit in escrow had no bearing on the accruability of the judgment. During the entire term of the escrow the Texas Mexican Railway vigorously contested liability. Until that liability became final, there was no certainty that the railroad would have to pay Bunn. When the litigation ended in 1954 and the railroad's liability became fixed and certain, the judgment could be accrued and deducted. In Clark Dredging Co. v. C. I. R., 1931, 23 B.T.A. 503, affirmed 5 Cir., 1933, 63 F.2d 527, a deposit to protect a surety did not create an exception to the general rule that a liability cannot be deducted while it is being contested. "[T]he taxpayer's liability was admittedly contingent. It was not a conceded but a contested liability".

The taxpayer relies on Becker Bros. v. United States, 2 Cir., 1925, 7 F.2d 3 and Malleable Iron Range Co. v. United States, 1928, 65 Ct.Cl. 441.[2] These cases held that where cash or bonds are deposited in trust or escrow as a supersedeas, such deposit is equivalent to payment of the judgment and will support a deduction from income to the extent of the deposit, notwithstanding the fact that an appeal is pending from the judgment. No authority is cited in Becker Bros. Becker Bros. is the only authority cited in Malleable Iron Range.

These cases may be distinguished.[3] We prefer, however, not to draw a fine line. Instead, we consider that Becker Bros. and Malleable Iron Range are contrary to Dixie Pine and Security Mills and the now well defined trend of decisions on accruability.[4]

■ We cannot accept the argument that the deposit in escrow caused loss of use and control of the funds, just as if the taxpayer had paid the claim. (1) It is not true. There was always a reasonable probability that the judgment would be reversed. Moreover, the tax-

1. Cases and law review material on accrual are collected in two comprehensive articles: Holland, Accrual Problems in Tax Accounting, 48 Mich.L.Rev. 149 (1949); Freeman, Tax Accrual in Accounting for Contested Items, 56 Mich.L. Rev. 727 (1958).

2. The Court of Claims now appears to have repudiated its holding in Malleable Iron Range Co. In National Biscuit Co. v. United States, Ct.Cl.1957, 156 F.Supp. 916, 922, the Court of Claims stated: "Thus, the Supreme Court has ruled that amounts paid into escrow do not constitute payment of the tax liability in the sense that the taxpayer should be allowed a deduction for an already paid contested liability."

3. See Consolidated Tea Co. v. Bowers, D.C.S.D.N.Y.1927, 19 F.2d 382; Insur-

ance Finance Corp. v. Commissioner, 3 Cir., 1936, 84 F.2d 382.

4. "While the [Becker Bros. and Malleable Iron Range] cases would appear to warrant a deduction of the amount of 1923, we think the trend of decisions of the Supreme Court and other Federal Courts, as well as of the Board, is contrary thereto. *The prevailing rule appears to be that unless the circumstances are exceptional, the deduction may be taken only in the year in which the liability becomes fixed by a final judgment. We are unable to see how a deposit in escrow or in trust of moneys or securities as a supersedeas adds anything by which the liability becomes fixed and determined. Its only effect is to guarantee the payment of the judgment in the event of its affirmance.*" North American Coal Corp. v. Commissioner, 1933, 28 B.T.A. 807.

payer retains some controls and benefits in escrow, such as the right to interest, dividends, and increment. (2) If it were sound, the entire amount of the deposit should be deductible; not just the amount of the judgment. (3) Acceptance of the argument would allow the taxpayer and a third party, a surety having no intcrst in the claim, to determine the taxpayer's accounting, tax reporting, taxability. (4) The escrow doctrine of relation back has no application to one who is not a party to the escrow, much less to the government administering a tax law.

 The temporary loss of possession of a deposit and other characteristics of some escrows do not lessen the fact that in this case the taxpayer's liability was contested, uncertain, and contingent during the term of the escrow and until final adjudication of the claim in litigation. As this Court said in Commissioner of Internal Revenue v. Southeastern Express, 5 Cir., 1932, 56 F.2d 600: "A mere contingent claim, especially a contested one, whether of loss or gain, may never be sustained or realized; it is too uncertain to be considered in making up an income tax return".

We do not say that the taxpayer may not accrue a liability *unless* he admits it absolutely. There may be some exceptional contingencies when the liability is calculable within reasonable limits and the existence of liability is so highly probable that the reasonableness of the expectancy should govern its accrual.[5] That is not this case.

 The basic inquiry is whether the taxpayer's accrual of the judgment presents a true or a distorted reflection of income for 1953. To obtain a deduction, the taxpayer has the burden of proving that he is entitled to a deduction.[6] A deduction in effect admits the existence of the liability. Here the taxpayer simultaneously asserts and denies a liability, the whole existence of which was in doubt until final adjudication of the litigation. To allow Texas Mexican Railway to accrue and deduct the amount of Bunn's judgment in 1953 would give a completely distorted reflection of the railroad's income for that year.

The judgment is

Reversed.

---

5. See Continental Tie & Lumber Co. v. United States, 1932, 286 U.S. 290, 52 S. Ct. 529, 76 L.Ed. 1111.

6. But see Griswold, An Argument against the Doctrine that Deductions Should be narrowly construed as a matter of Legislative Grace, 56 Harv.L.Rev. 1142 (1943).