## ANTHONY'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3260.

Circuit Court of Appeals, Tenth Circuit.

May 20, 1946.

Roger S. Randolph, of Tulsa, Okl. (B. C. Conner, John M. Winters, Jr., and Gentry Lee, all of Tulsa, Okl., on the brief), for petitioners.

Henry Kutz, of Washington, D. C. (Sewall Key, Helen Carloss, and Fred E. I. Youngman, all of Washington, D. C., on the brief), for respondent.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The question presented by this appeal is whether a taxpayer on a cash basis, who makes a gift in 1937 of an interest in an oil and gas lease, together with the impounded income therefrom, is taxable upon the actual receipt of such income by the donee and his assignees in 1940.

The decedent, S. W. Anthony,[1] and the Klingensmith Oil Company each owned an undivided interest in an oil and gas lease, which Klingensmith developed by drilling five oil wells thereon without consulting or obtaining Anthony's permission. Both parties however executed division orders authorizing The Texas Company to purchase the oil produced from the lease, and The Texas Company did purchase the oil as and when produced. When Anthony and Klingensmith failed to agree concerning Anthony's share of the development and operating expense, Klingensmith filed a lien on Anthony's share of the proceeds of the oil, and later filed suit thereon. Solely as a result of this dispute and litigation, The Texas Company impounded all of Anthony's share of the proceeds of the oil produced from the lease during the years 1936 and 1937. On April 20, 1937, Anthony assigned by gift to his brother, F. A. Anthony, all of his interest in the leasehold, together with all of the oil produced therefrom "now in the hands of The Texas Company".

In his gift tax return for 1937, Anthony separately valued the oil and gas sales to April 1, 1937, in the sum of $31,175.09, and the leasehold and equipment at $42,162.68, or a total of $73,338.77, less the "Claim of Klingensmith" in the sum of $26,942.44, leaving a net value of $46,396.33. On December 18, 1938, and before any of the impounded funds had been distributed, F. A. Anthony re-assigned by gift three-fourths of his interest in the lease to three members of his family. When in 1939 Klingensmith filed suit against S. W. Anthony, F. A. Anthony, the assignees of F. A. Anthony, and The Texas Company, seeking judgment for Anthony's share of the development and operating expenses, S. W. Anthony filed a disclaimer in this suit stating that he claimed no interest whatsoever in the lease or in the impounded proceeds therefrom. The suit was dismissed as against him, and the remaining parties adjusted the controversy by a settlement resulting in the payment to them in the year 1940 of the proceeds of the accrued and impounded oil runs in the sum of $31,175.09, less the agreed claim of Klingensmith.

The Commissioner ruled that the $31,195.09 should have been included in S. W. Anthony's income tax return for the taxable year 1940, the year during which it was actually received by the assignees from The Texas Company. Following the rationale of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, and its predecessors, the Tax Court sustained the Commissioner (5 T.C. 752), holding that since Anthony was the owner of the property when it produced the income, and was prevented from receiving it only because of an intervening creditor's lien, he earned or created the right to receive it, thereby realizing the taxable gain in the year it was actually paid. We agree.

Since Justice Holmes in Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916, observed that "Taxation is not so much concerned with the refinements of

---

[1] S. W. Anthony died in 1944 while this litigation was pending, and the petitioners here are the executors of his estate.

title as it is with the actual command over the property taxed", courts have realistically looked to the control of the source and power of disposition of the income when it is earned as a touchstone for the determination of the question of taxable realization. Thus, it is said in Helvering v. Horst, supra, [311 U.S. 112, 61 S.Ct. 147], that the power to dispose of income is the "equivalent of ownership of it. * * * It is the exercise of the power of disposition of the interest or compensation with the resultant payment to the donee which is the enjoyment by the donor of income derived from them". See also Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Mertons, Vol. 2, § 18.02.[2]

Making application of this principle, when in 1937 Anthony made his gift, the income in question had been earned and was attributable to Anthony as the owner of the leasehold estate which produced it. The oil had been produced and sold to The Texas Company, and The Texas Company was prevented from paying, and Anthony from receiving it, only because a creditor asserted a lien against it. The mere fact that a lien was asserted against it renders it nonetheless earned income. The lien could attach only as, if and when the income was produced. Indeed, Anthony realized that the income had been earned, for when he came to assign it by gift to his brother, he treated it separately from the income producing property, and made the gift subject to the claim of Klingensmith. If no lien had been asserted against the income, but Anthony had assigned it before The Texas Company had satisfied itself concerning merchantable title to the leasehold it cannot now be said in the face of modern authority that the income was not attributable to the owner of the leasehold when it was earned. We think it no less true when, as here, the only impediment to the actual payment of the income was a supervening claim of a creditor which did not have the effect of attacking the ownership of its source. Petitioners cite and rely upon United States v. Spalding, 9 Cir., 97 F.2d 701. There it was held that the donor was not taxable on the proceeds of oil runs assigned by him after they were earned, but before they were due and payable by the purchaser of the oil. The court was of the opinion that because the income was not payable to or receivable by the donor after the assignment, it was not his income and he was therefore not taxable thereon. The facts there and here are indistinguishably similar, but the Spalding case was decided before the advent of the Horst, Eubank [311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81], and Schaffner cases, and insofar as its conclusions are out of harmony with the philosophy of these more recent authoritative decisions, it must yield.

True, Anthony transferred the income producing property and the income before it was actually received, but the realization of income is the taxable event rather than the acquisition of the right to receive it, and where the taxpayer does not actually receive the income in money or property, "Realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him". Helvering v. Horst, supra, 311 U.S. at page 115, 61 S.Ct. at page 146, 85 L.Ed. 75, 131 A.L.R. 655.

■ It is now settled that income returnable on a cash basis is taxable when it has been actually or constructively received. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Farrell v. Commissioner, 5 Cir., 134 F.2d 193; Colby v. Commissioner, 45 B.T.A. 536; Austin v. Commissioner, 6 T. C. 594. Thus, the income involved here had been earned by Anthony as the owner of its source when it was transferred by gift to his brother. But the last step by which he obtained the fruition of the economic gain which had already accrued to him occurred in 1940 when it was actually paid to his donee and his assignees. He procured the payments of the proceeds of the oil to his donee, thereby realizing economic gain in the year of its actual payment the same as if he had received it himself. Ac-

<hr>

[2] See Analysis of Cases by Seymour S. Mintz in Basic Concepts of Taxable Income, published by the Federal Bar Association by the Bureau of National Affairs.

tual payment to the assignees constituted constructive payment to him.

Petitioners rely heavily upon Commissioner v. Timken, 6 Cir., 141 F.2d 625, wherein the owner of a note with due and unpaid interest assigned it by gift to a charitable organization. The interest was later paid and actually received by the donee of the note. The Commissioner determined a deficiency on the theory that the income was attributable to the assignor of the note. The Board of Tax Appeals (now Tax Court), 47 B.T.A. 494, distinguished the facts from the rationale of the Horst case, holding that because of the financial condition of the payer of the note at the time of its assignment, there was little likelihood that either the principal or the interest would ever be paid, hence the Commissioner's contention that the donor realized a taxable gain in the year of the gift or in the year in which the interest was actually paid was not justified by the facts. The Circuit Court affirmed on the same theory.

In our case, the income in question was actually earned; the only contingency against its payment to the owner of the income producing property was the extraneous claim of a creditor. We think the facts are clearly distinguishable, and the judgment is affirmed.